# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

MICHAEL KNOPKE, on behalf of )
himself and others similarly situated, )
           )
           Plaintiff, )
           )
vs.            )     **Case No. 14-2225-JAR-JPO**
           )
FORD MOTOR COMPANY, )
           )
           Defendant. )
_____)

## MEMORANDUM AND ORDER

Plaintiff Michael Knopke brings this action against Defendant Ford Motor Company ("Ford"), on behalf of himself and others similarly situated, alleging that the throttle body component of the 2011 Ford Edge vehicle is defective, that Ford knew the throttle was defective yet concealed that information from consumers, and that Ford breached its warranties by denying any defect in the vehicle during the term of the extended warranty. Before the Court is Defendant Ford's Motion to Dismiss the Complaint and to Strike Nationwide Class Allegations (Doc. 4) and Plaintiff's Motion for Leave to File Sur-Reply (Doc. 11). The motions are fully briefed and the Court is prepared to rule. As explained more fully below, Plaintiff's motion for leave to file sur-reply is granted; the Court has considered the sur-reply attached to Plaintiff's motion for leave in deciding the motion to dismiss and strike. Defendant's motion to dismiss is granted as to Count II and otherwise denied; Defendant's motion to strike is denied.

## I.    Facts Alleged in the Complaint

The following facts are alleged in the Complaint and are assumed to be true for purposes of deciding these motions. On July 15, 2013, Plaintiff Michael Knopke purchased a used 2011 Ford Edge SEL from Speedway Chrysler-Dodge-Jeep, Inc. in Lansing, Kansas. At the time of

purchase, Plaintiff's vehicle had a mileage reading of 32,195.  Prior to making this purchase, Plaintiff read materials provided by Ford regarding the 2011 Ford Edge, including the vehicle's sales brochure and material on the Ford website.  In its sales brochure, Ford represented that the 2011 Ford Edge contained "smart new engines," "maximum V6 efficiency and power no one in the class can beat," and "state-of-the-art safety."

On October 31, 2013, Plaintiff was attempting to pass another vehicle on Interstate 435 in his Ford Edge when, without warning, the vehicle went "limp" and quickly decelerated, failing to respond to his depression of the accelerator.  Plaintiff, his wife, and two young children were nearly rear-ended at high speed by another vehicle as a result.  An amber wrench warning appeared in the vehicle's instrument cluster indicating "Powertrain malfunction/reduced power (RTT): Illuminates when a powertrain or an AWD fault has been detected."  The failure was caused by a defective throttle body in Plaintiff's 2011 Ford Edge SEL.

Ford's New Vehicle Limited Warranty ("NVLW") on the Ford Edge covers all powertrain parts that "malfunction or fail during normal use" within five years of service or 60,000 miles, whichever occurs first.  Plaintiff took his vehicle to an authorized Ford dealer for warranty-covered service, but was told that they could not retrieve the error code, that there were no Technical Service Bulletins addressing the issue, and that they were unable to duplicate the problem.  Plaintiff telephoned Ford customer service, and was told by a customer service agent that Ford was not aware of any such problems with the Class Vehicle.

On December 27, 2013, Plaintiff was attempting to accelerate on the highway when his 2011 Ford Edge SEL once again went "limp" and quickly decelerated, with no responsiveness upon depression of the accelerator pedal.  The odometer reading at the time of

this failure was 44,950 miles and the vehicle was less than five years old, making it covered under the NVLW. Plaintiff again returned to his local authorized Ford dealer for service, but was told that they could not duplicate the problem.

On or about December 28, 2013, Plaintiff's wife Christina telephoned Ford's customer service department and informed Ford of the recurring throttle problem with their vehicle. Christina was told by a customer service agent that Ford was elevating the Knopkes' complaint because it was a safety issue, and a Ford representative would call them back. On or about December 30, 2013, Plaintiff received a phone call from a Ford customer service agent who identified himself as "Jason." Plaintiff informed Jason of the recurring problem, but was told by Jason that no Technical Service Bulletins had been issued addressing the problem, and that Ford did not see the issue as "technically relevant." Jason suggested that Mr. Knopke purchase an extended warranty from Ford.

The 2011 Ford Edge was originally manufactured with throttle body part number AT4Z9E926A, but at some point Ford "superseded" that part with a new part: AT4Z9E926B. As of May 7, 2014, 54 of the 190 (28%) official complaints about the 2011 Ford Edge registered with the National Highway Traffic Safety Administration ("NHTSA") relay issues with spontaneous rapid deceleration, throttle failure and stalling. Most of these consumers reported that they were operating their vehicles at highway speeds at the time of throttle failure. Many consumers reported being told by Ford service professionals that the throttle failure problem in the 2011 Ford Edge is the result of a defective throttle body, and that Ford is aware of the issue. Plaintiff's Complaint contains ten representative examples of official complaints about loss of throttle control in the 2011 Ford Edge, all of which describe failures that are substantially similar

to that experienced by the Knopkes.  The public complaints to NHTSA regarding this issue occurred as early as May 26, 2012, more than one year prior to Plaintiff's purchase.

Ford represented that purchasing a 2011 Ford Edge would entitle a consumer to certain rights and remedies under the NVLW.  The warranty benefits promised by Ford's NVLW were part of the basis of the bargain for Plaintiff and the putative class.  Ford knows and has known that the original throttle body in the Class Vehicle is defective, but it has concealed that information from its customers and refused to provide appropriate warranty benefits to correct the defect.

Plaintiff had no opportunity to negotiate the terms of the warranty (including its durational limits), and had no meaningful choice but to accept the unilaterally imposed warranty terms.  Ford concealed its unique and superior knowledge as to the defective nature of the 2011 Ford Edge and its inability or unwillingness to offer adequate warranty repairs.  Ford also attempts to exclude, modify or otherwise limit the implied warranty of merchantability's reach under Kansas law, stating that "You may not bring any warranty-related claim as a class representative" and "Ford and your dealer are not responsible for any time or income that you lose . . . or for any other incidental or consequential damages you may have."

## II.     Motion to Dismiss under Fed. R. Civ. P. 12(b)(6)

As to Counts II, IV, and the attorneys' fees and civil penalties claims in Count III, Ford moves to dismiss for failure to state a claim upon which relief may be granted.  To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must present factual allegations, assumed to be true, that "raise a right to relief above the speculative level" and must contain

"enough facts to state a claim to relief that is plausible on its face."[1]  Under this standard, "the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims."[2]  The plausibility standard does not require a showing of probability that "a defendant has acted unlawfully,"[3] but requires more than "a sheer possibility."[4]

The plausibility standard enunciated in *Bell Atlantic v. Twombly*,[5] seeks a middle ground between heightened fact pleading and "allowing complaints that are no more than 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action,' which the Court stated 'will not do.'"[6]  *Twombly* does not change other principles, such as that a court must accept all factual allegations as true and may not dismiss on the ground that it appears unlikely the allegations can be proven.[7]

The Supreme Court has explained the analysis as a two-step process.  For purposes of a motion to dismiss, the court "must take all the factual allegations in the complaint as true, [but] we 'are not bound to accept as true a legal conclusion couched as a factual allegation.'"[8]  Thus, the Court must first determine if the allegations are factual and entitled to an assumption of truth,

---

[1]*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007).

[2]*Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (emphasis in original).

[3]*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[4]*Id.*

[5]*Twombly*, 550 U.S. at 544.

[6]*Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Twombly*, 550 U.S. at 555).

[7]*Id.* (citing *Twombly*, 550 U.S. at 556).

[8]*Iqbal*, 556 U.S. at 678.

or merely legal conclusions that are not entitled to an assumption of truth.[9]  Second, the Court

must determine whether the factual allegations, when assumed true, "plausibly give rise to an

entitlement to relief."[10]  "A claim has facial plausibility when the plaintiff pleads factual content

that allows the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged."[11]

### A.    Count II, Unconscionability

Count II seeks a declaratory judgment that the NVLW's durational limit of five years or

60,000 miles is unconscionable and therefore unenforceable.  Plaintiff relies on a line of cases

that identify an unconscionability exception that allows breach of express warranty claims to

survive when the alleged defect manifests itself *outside* of the warranty period.[12]  These courts

allow breach of express warranty claims to proceed on the theory that a manufacturer's

knowledge of a latent defect at the time of the warranty and failure to notify the customer that

the product will fail renders a durational warranty unconscionable.[13]  So the unconscionability

---

[9]*Id.* at 679.

[10]*Id.*

[11]*Id.* at 678.

[12]*See, e.g.*, *Carlson v. Gen. Motors Corp.*, 883 F.2d 287, 296 (4th Cir. 1989) (holding district court erroneously dismissed express warranty claims of plaintiffs who alleged that they first encountered problems with vehicles after the express and implied warranties expired); *McCabe v. Daimler AG*, 948 F. Supp. 2d 1347, 1358 (N.D. Ga. 2013); *Meyers v. Garmin Int'l, Inc.*, No. 13-2416-CM, 2014 WL 273983, at *5–6 (D. Kan. Jan. 24, 2014); *Henderson v. Volvo Cars of N.A., LLC*, No. 09-4146 (DMC) (JAD), 2010 WL 2925913, at *8 (D.N.J. July 21, 2010).

[13]*See, e.g.*, *Henderson*, 2010 WL 2925913, at *8; *Bussain v. DaimlerChrysler Corp.*, 411 F. Supp. 2d 614, 623 (M.D.N.C. 2006); *McCabe*, 948 F. Supp. 2d at 1359.

theory is typically addressed in the context of a motion to dismiss an express warranty claim.[14]

Here, Plaintiff asserts an express warranty claim in Count I of the Complaint that is not the

subject of this motion to dismiss, based on allegations that the throttle failures occurred *during*

the warranty period. Therefore, Plaintiff's breach of express warranty claim does not depend on

a finding of unconscionability.

Nonetheless, the Court proceeds to address the merits of this claim. Courts have

traditionally taken the view that

> competent adults may make contracts on their own terms, provided
> they are neither illegal nor contrary to public policy, and that in the
> absence of fraud, mistake or duress a party who fairly and
> voluntarily entered into such a contract is bound thereby,
> notwithstanding it was unwise or disadvantageous to him."[15] This
> rule applies regardless of a party's failure to read the contract and
> "even applies when the contract turns out to be disadvantageous to
> the complaining party.[16]

"However, the rule has been qualified by the doctrine of unconscionability."[17]

"The burden of establishing unconscionability is on the party attacking the contract.

Whether a contract is unconscionable under the Uniform Commercial Code or the Kansas

Consumer Protection Act is a question of law."[18] Unconscionability generally must be shown "at

---

[14]*See, e.g.*, *Nelson v. Nissan N.A., Inc.*, 894 F. Supp. 2d 558, 566 (D.N.J. 2012) (granting motion to dismiss unconscionability claims but allowing to proceed claims for breach of express warranty based on allegations that transmission problems began during a warranty period).

[15]*Wille v. Sw. Bell Tele. Co.*, 549 P.2d 903, 905 (Kan. 1976) (citation omitted).

[16]*John Deere Leasing Co. v. Blubaugh*, 636 F. Supp. 1569, 1572 (D. Kan. 1986) (citing *Wille*, 549 P. 2d at 905).

[17]*Id.*

[18]*Santana v. Olguin*, 208 P.3d 328, 332 (Kan. Ct. App. 2009) (quotation marks and citations omitted).

7

the inception of the contract rather than in the light of subsequent events."[19]  *Wille v.*

*Southwestern Bell Telephone Co.*, is the seminal Kansas case on unconscionability.[20]  After

noting the difficulty of precisely defining unconscionability, the *Wille* court listed ten factors that

courts have used to determine whether a specific transaction is unconscionable:

> (1) The use of p[r]inted [sic] form or boilerplate contracts drawn
> skillfully by the party in the strongest economic position, which
> establish industry wide standards offered on a take it or leave it
> basis to the party in a weaker economic position . . . (2) a
> significant cost-price disparity or excessive price; (3) a denial of
> basic rights and remedies to a buyer of consumer goods . . . ;
> (4) the inclusion of penalty clauses; (5) the circumstances
> surrounding the execution of the contract, including its commercial
> setting, its purpose and actual effect . . . ; (6) the hiding of clauses
> which are disadvantageous to one party in a mass of fine print
> trivia or in places which are inconspicuous to the party signing the
> contract . . . ; (7) phrasing clauses in language that is
> incomprehensible to a layman or that divert his attention from the
> problems raised by them or the rights given up through them;
> (8) an overall imbalance in the obligations and rights imposed by
> the bargain; (9) exploitation of the underprivileged,
> unsophisticated, uneducated and the illiterate . . . ; and
> (10) inequality of bargaining or economic power.[21]

Courts often distinguish between "procedural" and "substantive" unconscionability.

Substantive unconscionability may be found "'when the terms of the contract are of such an

---

[19]*Link's Estate v. Wirtz*, 638 P.2d 985, 988 (Kan. Ct. App. 1982); *see also* K.S.A. § 84-2-302 ("If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable *at the time it was made* the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result.") (emphasis added)).

[20]549 P.2d 903 (Kan. 1976).

[21]*Id.* at 906–07 (citations omitted); *see also Kansas ex rel. Stovall v. DVM Enters., Inc.*, 62 P.3d 653, 658 (Kan. 2003).

oppressive character as to be unconscionable.'"[22]  In the context of an express warranty, "a finding of unconscionability cannot be premised solely upon allegations that Defendant knew that a defect in the product might arise."[23]  Moreover, the Court is unable to find that a five-year/60,000 mile durational warranty is substantively unconscionable in light of industry standards; much shorter durational warranties have been found to be conscionable.[24]

Plaintiff maintains that his claim is similar to the procedural unconscionability claim alleged in *Meyers v. Garmin International, Inc.*, which survived dismissal because the plaintiff alleged a lack of meaningful choice in determining the durational warranty limitation of a GPS device, as well as gross disparity in bargaining power because the defendants knew or should have known at the time they issued the warranty that the product's battery would fail shortly after the warranty period expired.[25]  Although Judge Murguia expressed skepticism about whether allegations of consumer complaints about the product made *before* the product was sold would be probative of the defendant's knowledge that the product was defective, he ultimately determined that the consumer complaints were well-pleaded facts entitled to an assumption of

---

[22]*John Deere Leasing Co. v. Blubaugh*, 636 F. Supp. 1569, 1573 (D. Kan. 1986) (quoting *Bank of Indiana, N.A. v. Holyfield*, 476 F. Supp. 104, 109–10 (S.D. Miss. 1979)).

[23]*Suddreth v. Mercedes-Benz*, No. 10-CV-5130 (DMC-JAD), 2011 WL 5240965, at *3 (D.N.J. Oct. 31, 2011); *see also Meyers v. Garmin Int'l, Inc.*, No. 13-2416-CM, 2014 WL 273983, at *6 (D. Kan. Jan. 24, 2014).

[24]*See, e.g.*, *Smith v. Ford Motor Co.*, 462 F. App'x 660, 663 (9th Cir. 2011) (finding three-year/36,000 mile warranty not unconscionable); *In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prods. Liab. Litig.*, 754 F. Supp. 2d 1145, 1181–82 (C.D. Cal. 2010) (finding three-year/36,000 mile warranty not unconscionable); *Alban v. BMW of N. Am., LLC*, No. 09-5398 (DRD), 2011 WL 900114, at *9 (D.N.J. Mar. 15, 2011) (finding four-year/50,000 mile warranty not unconscionable); *Suddreth*, 2011 WL 5240965, at *4 (finding four-year/50,000 mile warranty not unconscionable); *Nelson v. Nissan N.A., Inc.*, 894 F. Supp. 2d 558, 565–66 (D.N.J. 2012) ("there is nothing substantively unconscionable or unreasonable about a 5 year/60,000 mile warranty.").

[25]*Meyers*, 2014 WL 273983, at *6.

truth in evaluating the motion to dismiss and denied the motion.[26]

Plaintiff's claim and factual allegations in this case are distinguishable from *Meyers*, and from the other cases upon which he relies.  Plaintiff alleges that at some point after the 2011 Ford Edge was first manufactured, Ford superseded the original throttle body with a new part. Plaintiff pled that there had been fifty-four official complaints with the NHTSA about the 2011 Ford Edge that concerned throttle failure, and he identified and quoted ten of these complaints, which are substantially similar to the throttle failures Plaintiff experienced.  Nine of the ten quoted complaints were made before Plaintiff's first alleged throttle failure, but no earlier than 2012.  But there are no specific allegations that Ford was aware of a throttle defect before it issued the warranty, allowing an inference that it concealed its knowledge of the defect in order to avoid warranty coverage.

The Complaint alleges as follows:

> Ford, as the manufacturer of the Class Vehicles, knew at the time it unilaterally imposed the terms of its NVLW that the throttle body . . . was defective and prone to repeated malfunction and/or failure beyond the warranty repair period.  Ford also knew, at the time it unilaterally imposed the durational limits of the NVLW, that Ford was either unable or unwilling to properly perform and/or authorize the warranty repairs to the throttle body that it had contracted to offer in the NVLW, thereby leaving the Class Vehicles defective both within and outside the warranty durational limits imposed by Ford.  Ford failed to disclose this knowledge to the class members and took affirmative steps to conceal it by continuing to tout the qualities of Class Vehicle's engine without disclosing the defect(s).[27]

Plaintiff's allegations about Ford's knowledge at the time the warranty issued are conclusory and

---

[26]*Id.*

[27]Doc.1 ¶ 75.

unsupported by the facts alleged elsewhere in the Complaint.  The Complaint alleges that sometime *after* the 2011 Edge was manufactured, the throttle part was replaced.  It alleges further that starting in 2012, consumers reported problems with the throttle substantially similar to the problems experienced by Plaintiff and members of the putative class.  However, the Complaint is devoid of facts to support the allegation that the throttle defect was known to Ford when it originally issued the warranty.  Instead, the well-pleaded facts allege that Ford learned of the problem after the warranty was drafted and issued.[28]

Plaintiff alleges that Ford's concealment of the problem created a propensity for the throttle failure to occur outside the warranty period, but again, this fact does not support a claim that Ford knew of the problem before it issued the durational warranty.  Plaintiff maintains in the sur-reply that he only needs to show Ford's actual or constructive knowledge before he purchased the used 2011 Ford Edge in July 2013.  But Plaintiff offers no authority or argument in support of this contention.  As already stated, unconscionability is to be measured at the inception of the contract.[29]  It is insufficient to plausibly state that the contract was unconscionable at its inception by alleging that Ford later learned of the defect and concealed it.

Second, Plaintiff is unable to allege facts in addition to Ford's knowledge of the defect to show procedural unconscionability.[30]  Plaintiff alleges that Ford unilaterally drafted the NVLW

[28]*See Suddreth*, 2011 WL 5240965, at *3 (finding no plausible claim of unconscionability where Plaintiff failed to allege knowledge before the warranties were issued).

[29]The Court does not mean to suggest that Plaintiff was not the beneficiary of the warranty as a purchaser of the used vehicle.  The parties do not appear to contest that the warranty transferred to Plaintiff for the remainder of the warranty term when he purchased it in 2013.

[30]*See Meyers*, 2014 WL 273983, at *5–6 (explaining that knowledge alone will not suffice to show unconscionability).

without any negotiation or opportunity for input from Plaintiff or members of the class.  It also alleges that Ford had superior bargaining power based on its knowledge of potential throttle failure.  Defendant argues in the reply that because Plaintiff purchased his vehicle used from a non-Ford dealer, Ford could not have "unilaterally imposed" the NVLW's limits or exercised unequal bargaining power.  The Court agrees—Plaintiff cannot allege plausible facts concerning the parties' bargaining power at the time the warranty was issued to the original buyer.  Moreover, allegations of unequal bargaining power, standing alone, are insufficient to state an unconscionability claim.[31]  And there is no allegation that the original purchaser lacked a meaningful choice about the time limits in the warranty, for example, whether that buyer could have purchased a greater or lesser warranty at the original dealership or elsewhere.[32]  The Court finds that Plaintiff's factual allegations fall short of alleging a plausible claim for relief that the durational limitation of Ford's express warranty is unconscionable.

### B.      Count III, Remedies Under K.S.A. § 50-639

Count III alleges that Ford breached the implied warranty of merchantability.  As part of this claim, Plaintiff alleges that Ford violated K.S.A. § 50-639 by attempting to exclude, modify, or otherwise limit the implied warranty of merchantability.  In the Complaint, Plaintiff provides two examples: the NVLW prohibits Plaintiff from making warranty-related claims as a class representative, and it states that neither Ford nor the dealer is responsible for any lost time or income, or for any other damages Plaintiff may have.  Under K.S.A. § 50-639(e), a disclaimer or

---

[31]*See Nelson*, 894 F. Supp. 2d at 566.

[32]*See Bussain v. DaimlerChrysler Corp.*, 411 F. Supp. 2d 614, 623 (M.D.N.C. 2006) (finding unconscionability claim sufficiently pled where it included an allegation that there was lack of warranty competition); *Henderson v. Volvo Cars of N.A., LLC*, No. 09-4146 (DMC) (JAD), 2010 WL 2925913, at *8 (D.N.J. July 21, 2010) (same).

limitation on an implied warranty of merchantability is void, and if a consumer prevails on claim for breach of the implied warranty on this basis, the Court may award civil penalties and attorneys' fees under K.S.A. § 50-636.  The Kansas Court of Appeals has explained: "Basically, K.S.A. 50-639 creates a free-standing KCPA violation when a supplier attempts to limit either a UCC warranty of merchantability or a UCC warranty of fitness for a particular purpose and then breaches the warranty in connection with a consumer transaction involving property."[33]

Defendant argues for dismissal of Plaintiff's claim for civil penalties and attorneys' fees under § 50-639(e) because: (1) Plaintiff is not an "aggrieved consumer" under the KCPA, and (2) Plaintiff has not alleged sufficient facts that Ford attempted to enforce the warranty limitations. Defendant relies on the private remedies provision of the KCPA, which provides that only "a consumer aggrieved by an alleged violation of this act may recover, but not in a class action, damages or a civil penalty as provided" in § K.S.A. 50-636.[34]  Defendant argues that Plaintiff is not aggrieved, as required to recover civil penalties and attorneys' fees, because Plaintiff was not damaged by any attempt by Ford to limit the implied warranty of merchantability.  Although not addressed by either party, it appears that the more problematic requirement of § K.S.A. 50-634(b) for Plaintiff is the fact that he brings this claim on behalf of a class.  The Act appears to preclude such remedies in a class action.  While the Court finds that the motion to dismiss on this remedies claim is warranted to the extent Plaintiff seeks to recover civil penalties and attorneys' fees on behalf of the class, because the class has not yet been certified and the parties have not briefed this issue, at this stage the Court denies the motion to

---

[33]*Golden v. Den-Mat Corp.*, 276 P.3d 773, 801 (Kan. Ct. App. 2012).

[34]K.S.A. § 50-634(b).

dismiss as premature.

While the Act does not define the term "aggrieved," the Kansas Supreme Court has defined the term as "having suffered loss or injury."[35]  Defendant argues that Plaintiff does not meet this definition because he does not allege that Ford ever attempted to enforce the alleged disclaimer of the implied warranty of merchantability or ever refused to honor Plaintiff's request for vehicle service under the NVLW.  But Plaintiff does allege that he suffered a loss or injury as a result of the disclaimer and that Ford denied his request for service multiple times because of the nature of the defect; each time the throttle failed he was required to turn the ignition off, deleting any electronic record of the problem and thus Ford's ability to repair the defect within the warranty period.

The Court further finds that Defendant's arguments about the sufficiency of the warranty limitation allegations are misplaced.  Defendant argues essentially that the claim should be dismissed for want of specific warranty language from the NVLW.  At this stage of the litigation, Plaintiff has alleged facts that give rise to a plausible claim that Ford limited the implied warranty of merchantability.  To the extent Defendant seeks to avoid liability based on the specific language of the policy, that is properly addressed when the warranty itself is before the Court on summary judgment.  The motion to dismiss the civil penalty and attorneys' fees remedies in Count III is therefore denied without prejudice to refiling after class certification is resolved.

## C.  Count IV, Kansas Consumer Protection Act

---

[35]*Finstad v. Washburn Univ. of Topeka*, 845 P.2d 685, 690 (Kan. 1993) (quotation omitted).

Defendant next moves to dismiss Count IV, which alleges a KCPA claim for unfair, deceptive, and unconscionable acts and practices.  Defendant argues that the Complaint fails to satisfy the heightened pleading requirements in Fed. R. Civ. P. 9(b) that apply to this claim.  Plaintiff responds that the Rule 9 pleading requirement is relaxed when it is shown that Plaintiff requires discovery to plead with more particularity when that information is exclusively in the hands of the opposing party.

This claim is based on Plaintiff's allegation that Ford fraudulently represented that the 2011 Ford Edge was safe and that it omitted and concealed the fact that the throttle body in the is defective.  Such a claim is subject to the pleading requirements of Fed. R. Civ. P. 9(b).[36]  Under Fed. R. Civ. P. 9, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."[37]  The rule's purpose is to provide the defendant fair and adequate notice of the claim and to allow the defendant to respond on an informed basis.[38]  A fraud claim requires "the time, place and contents of the false representation, the identity of the party making the false statements and the consequences thereof."[39]  The rule allows "malice, intent, knowledge, and other condition of mind of a person" to be averred generally.[40]  "Allegations of fraud may be based on information and belief when the facts in

---

[36]*Thompson v. Jiffy Lube Int'l, Inc.*, 505 F. Supp. 2d 907, 931–32 (D. Kan. 2007); *Burton v. R.J. Reynolds Tobacco Co.*, 884 F. Supp. 1515, 1524 (D. Kan. 1995).

[37]Fed. R. Civ. P. 9(b).

[38]*Farlow v. Peat, Marwick, Mitchell & Co.*, 956 F.2d 982, 987 (10th Cir. 1992).

[39]*Tal v. Hogan*, 453 F.3d 1244, 1263 (10th Cir. 2006) (citing *Koch v. Koch Indus.*, 203 F.3d 1202, 1236 (10th Cir. 2000)) (quoting *Lawrence Nat'l Bank v. Edmonds*, 924 F.2d 176, 180 (10th Cir. 1991)).

[40]Fed. R. Civ. P. 9(b); *see Scheidt v. Klein*, 956 F.2d 963, 967 (10th Cir. 1992).

15

question are peculiarly within the opposing party's knowledge and the complaint sets forth the factual basis for the plaintiff's belief."[41]

While this relaxed standard applies to Plaintiff's fraud claims here because he alleges a factual basis for his belief that Ford possessed actual or constructive knowledge of the throttle failure, at least when Plaintiff purchased the used vehicle in 2013, the Court finds that Plaintiff has pleaded fraud with sufficient particularity under the heightened standard in Rule 9(b) as well. Plaintiff alleges that specific dealers and customer service representatives misrepresented to Plaintiff and his wife that there was no documented throttle problem with the 2011 Ford Edge, despite several specifically averred facts that should have put Ford on notice of the problem. Plaintiff details consumer complaints in 2012 and 2013 before he purchased his used vehicle. Even if Plaintiff is unable to plead that Ford had knowledge of the defects prior to the original purchase of the vehicle, he has certainly pled sufficient facts to support his allegation that Ford had knowledge before he purchased the used vehicle in 2013. He alleges that the throttle part was replaced without disclosing that fact to consumers, and he alleges details about substantially similar consumer complaints to the NHTSA made in 2012 and early 2013. The KCPA governs deceptive acts and practices "in connection with a consumer transaction."[42] And it prohibits "any unconscionable act or practice in connection with a consumer transaction . . . whether it occurs before, during or after the transaction."[43] Plaintiff need not show that Ford had knowledge of the defect before it was sold to the original purchaser to maintain his KCPA claim.

---

[41]*Scheidt*, 956 F.2d at 967; *see also Koch*, 203 F.3d at 1236.

[42]K.S.A. § 50-626(a).

[43]*Id.* § 50-627(a).

16

In sum, the Court finds that Plaintiff has pled sufficient facts under Rule 9(b) to state a plausible claim for relief under the KCPA.

**III.     Motion to Strike Nationwide Class Allegations**

As to Count V, Defendant asks the Court to strike the nationwide class allegations under Fed. R. Civ. P. 12(f) and 23.  Defendant moves to strike on the grounds that it is evident from the face of the Complaint that Plaintiffs are unable to satisfy the requirements for certification under Rule 23 as a matter of law.

The Supreme Court has endorsed a critical examination of class allegations at the pleading stage, stating that "[s]ometimes the issues are plain enough from the pleadings to determine whether the interests of absent parties are fairly encompassed within the named plaintiff's claim."[44]  Significantly, several courts have stricken class allegations on the pleadings in putative nationwide consumer class action cases where, as alleged in this case, manageability, choice of law, and acertainability issues would prevent certification.[45]

Because Kansas' choice of law rules utilizes the *lex loci* test, it appears that certification of a national class would require this Court to apply the laws of all 50 states to each respective

---

[44] *Gen. Tel. Co. of S.W. v. Falcon*, 457 U.S. 147, 160 (1982).

[45] *See, e.g.*, *Pilgrim v. Univ. Health Card, LLC*, 660 F.3d 943, 949-50 (6th Cir. 2011) (ruling that district court may strike class allegations prior to discovery when discovery will not "alter the central defect in th[e] class claim. . . . [which was] governed by . . . a largely legal determination, and no proffered or potential factual development offers any hope of altering that conclusion, on that generally will preclude class certification"); *Rikos v. Procter & Gamble, Co.*, No. 1:11-cv-226, 2012 WL 641946, at *4 (S.D. Ohio Feb. 28, 2012) (striking class allegations in consumer action because a "nationwide class of all Align purchasers is inappropriate because the [California] CLRA and the UCL cannot be constitutionally applied to the claims of class members who neither reside in California nor purchased the product there"); *In re Yasmin & Yaz (Dorspirenone) Mktg.*, 275 F.R.D. 270, 276 (S.D. Ill. 2011) (granting defendants' motion to strike class allegations because "it is evident that individual questions of law and fact predominate, and therefore the case is not manageable as a nationwide or statewide class action'); *Hovsepian v. Apple, Inc.*, No. 08-5788, 2009 WL 5069144, at *6 (N.D. Cal. Dec. 17, 2009) (striking class action allegations where "the class is not ascertainable because it includes members who have not experienced any problems with their iMac display screens").

plaintiff's claim.[46]  Therefore, Plaintiff's ability to meet the Rule 23(b)(3) requirement that

questions of law common to the class predominate over questions affecting only individual

members is questionable given that the nationwide claims implicate all 50 states' laws.  These

variances also create manageability issues that can render class certification inappropriate.

      While Plaintiff acknowledges that a motion to strike is procedurally permissible at the

pleading stage, he argues that he should be permitted to engage in class discovery and move for

class certification, at which time Defendant can make the arguments they raise herein.  Although

the Court has the authority to strike the class allegations at this time, it is also mindful of its

obligation to conduct a "rigorous analysis" into whether the prerequisites of Rule 23 are met.

Much of the authority cited by Ford in support of its proposition that state law variances defeat

the predominance requirement of Rule 23 deals with that requirement in the context of a class

certification motion.  While the Court is mindful of the challenges posed by the nationwide class

claims in Count V of Plaintiff's Complaint, it finds that the better course is to allow discovery to

proceed on issues of class certification and to consider these issues in the context of a motion to

certify the class.  This approach will allow the Court to conduct the rigorous analysis required to

determine these issues.[47]  The Court therefore denies Ford's motion to strike the nationwide class

---

[46]*Boyd Rosene & Assoc., Inc. v. Kan. Mun. Gas Agency*, 123 F.3d 1351, 1352-53 (10th Cir. 1997); *Dragon v. Vanguard Indus., Inc.*, 89 P.3d 908, 917 (Kan. 2004).

[47]*See Smith v. Merial Ltd.*, Nos. 10-439, 10-442, 10-1050, 10-1391, 10-6372, 11-6976, 2012 WL 2020361, at *3-7 (D.N. J. June 5, 2012) (adopting similar approach requiring additional briefing on conflict of law issues raised in motion to strike class action allegations in putative nationwide consumer class action involving flea and tick prevention products for pets); *Sanft v. Winnebago Indus., Inc.*, 214 F.R.D. 514, 519 (N.D. Iowa 2003) (collecting cases discussing the importance of considering the evidentiary record in determining whether Rule 23 requirements have been met); *In re Bayer Corp. Combination Aspirin Prods. Mkt'g & Sales Pracs. Litig.*, 701 F. Supp. 2d 356, 379 (E.D.N.Y. 2010) ("plaintiffs link defendant's actions to the elements of the state law causes of action and sketch the outlines of those causes of action.  Cursory, yes, but especially when considered in conjunction with the detailed choice of law analysis to be conducted at class certification, the allegations are sufficient. . . . "); *Khorrami v. Lexmark Int'l, Inc.*, No. 07-1671 DDP, 2007 WL 8031909, at *2 (C.D. Cal. Sept. 13, 2007) (collecting

allegations in the and will allow discovery to proceeds as to the class allegations.

**IT IS THEREFORE ORDERED BY THE COURT** that Defendant Ford's Motion to Dismiss Count the Complaint and to Strike Nationwide Class Allegations (Doc. 4) is granted in part and denied in part.  The motion to dismiss is granted as to Count 2 and otherwise denied. The motion to strike is denied.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Leave to File Sur-Reply (Doc. 11) is **granted**.

Dated: November 10, 2014

         S/ Julie A. Robinson

JULIE A. ROBINSON

UNITED STATES DISTRICT JUDGE

---

cases finding motion to strike class allegations solely on the basis of the allegations in the complaint).